UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JIMMY BURDEN,

                Petitioner,

v.                                     CASE NO. 2:06-10139
                                     HONORABLE LAWRENCE P. ZATKOFF

LINDA M. METRISH,

                Respondent.

_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION
AND DENYING PETITIONER'S MOTIONS FOR APPOINTMENT OF COUNSEL**

**I. Introduction**

This matter is pending before the Court on petitioner Jimmy Burden's habeas corpus petition under 28 U.S.C. § 2254. The habeas petition derives from charges that Petitioner committed an armed robbery in Detroit, Michigan in 1983.

Petitioner chose to represent himself at trial, although the trial court ordered defense counsel to remain in the courtroom and to assist Petitioner if he sought advice. On September 30, 1983, a Detroit Recorder's Court jury found Petitioner guilty, as charged, of two counts of armed robbery. *See* Mich. Comp. Laws § 750.529. Petitioner moved for a new trial on the ground that the trial court should have prevented him from representing himself at trial. On October 14, 1983, the trial court denied Petitioner's motion for new trial and sentenced Petitioner as a fourth felony offender to two concurrent terms of sixty to one hundred years in prison.

In an appeal of right, Petitioner argued through counsel that: (1) his refusal to request jury instructions on the lesser-included offense of unarmed robbery was a serious mistake that

compromised his right to a fair trial; (2) jury instructions on necessarily included lesser offenses should be required, despite the parties' objections, whenever the principal charge carries a potential sentence of life imprisonment; (3) it was incumbent on the trial court when instructing on armed robbery to stress the element of actual presence of a weapon or article; and (4) the trial judge and prosecuting attorney violated their duties to ensure a fair trial by failing to enforce a pretrial order prohibiting mention of Petitioner's prior convictions.   The Michigan Court of Appeals was unpersuaded by these arguments and affirmed Petitioner's conviction in an unpublished decision. *See People v. Burden*, No. 76681 (Mich. Ct. App. Jan. 25, 1985).   On June 25, 1985, the Michigan Supreme Court denied Petitioner's letter request to determine whether leave to appeal or other relief should be granted.   *See People v. Burden*, No. 75977 (Mich. Sup. Ct. June 25, 1985).   On December 19, 1991, Petitioner filed a motion for relief from judgment, which the trial court denied on February 27, 1992, without providing any reasons.

Petitioner filed a series of federal habeas corpus petitions beginning in November of 1992. The petitions were dismissed without service of the petition on the State.   *See Burden v. Jabe*, No. 92-C V-70434-DT (E.D. Mich. Dec. 2, 1992) (Zatkoff, J.); *Burden v. Hawley*, No. 2:93-CV-00141 (W.D. Mich. Feb. 19, 1997) (Quist, J.); *Burden v. Hawley*, No. 94-CV-70079-DT (E.D. Mich. Mar. 4, 1994) (Cohn, J.); *Burden v. Hawley*, No. 94-CV-71644-DT (E.D. Mich. May 16, 1994) (Gadola, J.); *Burden v. Hawley*, No. 94-CV-71816-DT (E.D. Mich. June 17, 1994) (Hackett, J.); *Burden v. Tessmer,* No. 96-CV-10124-BC (E.D. Mich. May 13, 1996) (Cleland, J.).   The last federal district court order on Petitioner's habeas petitions was Judge Quist's dismissal of Petitioner's 1993 habeas petition without prejudice to Petitioner's right to re-file his habeas petition after all state court remedies were exhausted.   Petitioner appealed Judge Quist's order, but on February 28, 2001, the

Sixth Circuit declined to issue a certificate of appealability.  *See Burden v. Hawley*, No. 00-2479 (6th Cir. Feb. 28, 2001).

On November 13, 2001, Petitioner filed a motion for relief from judgment through the State Appellate Defender Office.  He argued that appellate counsel was ineffective for failing to object to the length of Petitioner's sentence.  The trial court denied the motion, and both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Burden*, No. 252804 (Mich. Ct. App. Mar. 15, 2004); *People v. Burden*, No. 126103 (Mich. Sup. Ct. Dec. 29, 2004).

Petitioner signed and dated his habeas petition on November 19, 2005.  The ground for relief and supporting facts read:

> I defended myself in the jury trial and were not afforded my constitutional and civil rights protected by the laws
>
> When I tried to question the jury as to what they thought I were not allowed to do so when I tried to explain to the jury what has occurred I were not allowed to do so I'm being held illegally in custody due to this

Respondent urges the Court to dismiss on the habeas petition on the basis that Petitioner did not comply with the statute of limitations.

## II.  Statement of Facts

The two victims were college students who had tickets to a school function at the Book Cadillac Hotel in Detroit, Michigan on April 9, 1983.  At approximately 5:00 p.m., they pulled into the hotel parking lot.  They saw Petitioner, thought he was the parking lot attendant, and asked how much it cost to park there.  When Petitioner replied that the fee was $1.80, one of the student handed $2.00 to Petitioner.  Petitioner then asked for a driver's licence.  As one of the students pulled out

3

his wallet, Petitioner put his hand in his pocket and ordered the students to hand over all their cash. They gave Petitioner an additional $12.00, for a total of $14.00. Petitioner also asked for their jewelry, but the only jewelry they had was a Timex watch, which Petitioner did not want. Petitioner instructed them to roll up their window and to sit there for three minutes to avoid getting hurt.

After Petitioner walked away, four hotel employees approached the students. One of the four employees asked the students whether they knew Petitioner. The students responded that Petitioner had just robbed him. The hotel employees then took off in the direction that Petitioner had gone. They caught up with Petitioner and asked him whether he had robbed some people in a car. Petitioner denied robbing anyone and ran away. The hotel employees chased him and caught him. In a subsequent scuffle with Petitioner, Petitioner's shoe and coat came off. He ran away again.

A patrol car came along and two of the hotel employees went with the officers in search of Petitioner. They saw Petitioner a short distance away and pointed him out to the officers, who arrested Petitioner. He was wearing one shoe and no overcoat when the officers stopped him. The shoe he was wearing matched the one that the hotel employees had acquired during their scuffle with Petitioner. At the police station, the officers took $16.00 from Petitioner and returned his coat and shoe. Petitioner told the police that he had been robbed.

Petitioner's mother testified for the defense that she, her husband, and her daughter had been giving Petitioner a total of $60.00 every month as spending money. On cross-examination, Mrs. Burden stated that she did not know how much money Petitioner possessed on April 9. Petitioner testified that he did not rob the victims.

### III. Discussion

### A. The Statute of Limitations

4

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year period of limitations for habeas petitions filed by state prisoners. *See* 28 U.S.C. § 2244(d). The limitations period runs from the latest of

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsection 2244(d)(1)(A) controls here because Petitioner is not alleging a state-created impediment, a new constitutional right, or a factual predicate that could not have been discovered earlier. Petitioner's conviction became final for purposes of subsection 2244(d)(1)(A) when his direct appeal came to an end in 1985. For inmates like Petitioner, whose convictions became final before the AEDPA was enacted on April 24, 1996, there was a grace period of one-year, or until April 24, 1997, to file their habeas petitions. *Brown v. O'Dea*, 187 F.3d 572, 577 (6th Cir. 1999), *vacated on other grounds*, 530 U.S. 1257 (2000). Petitioner filed the pending habeas corpus petition almost eight and a half years after the April 24, 1997 deadline. His habeas petition is time-barred, absent tolling of the one-year limitations period.

Petitioner's prior habeas corpus petitions had no impact on the statute of limitations, because the limitations period is not tolled during the pendency of a federal habeas petition. *Duncan v.*

5

*Walker*, 533 U.S. 167, 181-82 (2001).  Even if the previous habeas petitions tolled the statute of limitations, the limitations period was tolled, at the latest, until February 28, 2001, when the Court of Appeals denied a certificate of appealability in Petitioner's 1993 habeas case.  Petitioner then waited over eight months to file his second motion for relief from judgment.  The post-conviction motion tolled the limitations period until December 29, 2004, when the Michigan Supreme Court denied leave to appeal the trial court's decision on Petitioner's post-conviction motion.[1]  Petitioner waited eleven more months to file his habeas corpus petition.  At best, the limitations period ran for a total of about nineteen months, or well over a year.

### 1.  Equitable Tolling

Equitable tolling applies to the one-year limitation period for habeas petitions.  *See Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001).  When deciding whether equitable tolling is appropriate, courts must consider and balance the factors set out in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), "unless there is congressional authority to the contrary."  *Dunlap*, 250 F.3d at 1009.  The *Andrews* factors are:

> (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

---

[1]  The limitations period is tolled under 28 U.S.C. § 2244(d)(2) for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  The Supreme Court has interpreted this subsection to mean that the limitations period is tolled until the petitioner's application for post-conviction review in state court "achieve[s] final resolution through the State's post-conviction procedures."  *Carey v. Saffold*, 536 U.S. 214, 220 (2002).  The limitations period is not extended an additional ninety days for the time during which a petition for certiorari is pending in the United States Supreme Court.  *Lawrence v. Florida*, __ U.S. __, __, 127 S. Ct. 1079, 1081, 1086 (2007).

*Andrews*, 851 F.2d at 151. "These factors are not necessarily comprehensive and they are not all relevant in all cases. Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002) (internal citation omitted).

Lack of prejudice to the respondent is not an independent basis for invoking the doctrine of equitable tolling, *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984), and Petitioner has not alleged that he was ignorant of the filing requirement or that he lacked notice or constructive knowledge of the statute of limitations. It also appears that Petitioner was not diligent in pursuing relief for his current claim.

### 2. Actual Innocence

Petitioner alleged at trial and in some of his previous habeas petitions that he is innocent of the crime for which he was convicted. Courts may toll the habeas statute of limitations for a credible claim of actual innocence. *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005). However, to prevail on a claim of actual innocence, a habeas petitioner generally has "to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Souter*, 395 F.3d at 600 (explaining that the actual-innocence exception for time-barred claims is limited to the rare and extraordinary case where a habeas petitioner presents new evidence which undermines the reviewing court's confidence in the outcome of the trial). The petitioner must demonstrate "that more likely than not any reasonable juror would have reasonable doubt" in light of the new evidence. *House v. Bell*, __ U.S. __, __, 126 S. Ct. 2064, 2077 (2006).

Petitioner has not submitted any new evidence demonstrating that he is actually innocent of

the armed robbery for which he was convicted.  Therefore, he is not entitled to equitable tolling on the basis of actual innocence.  His claim is time-barred.

### B.  Exhaustion/Procedural Default

Petitioner's claim is procedurally defaulted in addition to being time-barred, because he failed to exhaust state remedies while he had an opportunity to do so.  The exhaustion doctrine requires prisoners to pursue available state remedies before seeking a federal writ of habeas corpus.  *See* 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  Prisoners must invoke "one complete round of the State's established appellate review process," including a petition for discretionary review in the state's supreme court "when that review is part of the ordinary appellate review procedure in the State."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 847 (1999).  Because 28 U.S.C. § 2254(b) "refers only to remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982), the exhaustion requirement "is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'"  *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

Petitioner did not present his pending claim to the Michigan Court of Appeals and the Michigan Supreme Court, and a state prisoner's only state court remedy for challenging a conviction is to file a motion for relief from judgment.  *See* Mich. Ct. R. 6.501 and the accompanying staff comment.  Petitioner has already filed two motions for relief from judgment and he may not file another one unless he alleges a retroactive change in the law or a claim of new evidence.  Mich. Ct. R. 6.502(G).  Petitioner is not alleging a retroactive change in the law or newly discovered evidence.  Therefore, he is barred from filing another motion for relief from judgment in state court and he lacks an available state remedy to exhaust.  "If no remedy exists, and the substance of a claim has

8

not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The Court deems the "cause and prejudice" argument abandoned here because Petitioner has not provided any explanation for his failure to raise his claim in the State's appellate courts. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003).

A federal habeas petitioner may obtain review of procedurally defaulted claims in the absence of a showing of "cause and prejudice" by demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The exception for miscarriages of justice requires demonstrating that a constitutional violation probably resulted in the conviction of a person who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup v. Delo*, 513 U.S. at 327.

Petitioner has not supported his pending claim with any new evidence of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the merits of Petitioner's claim. His claim is procedurally defaulted and barred from substantive review.

### C.  On the Merits

Petitioner's claim lacks substantive merit even if it were timely filed and not procedurally defaulted.[2] Petitioner alleges that he was not permitted to (1) question the jurors regarding their

---

[2] The Court may review the merits of Petitioner's claim, because neither exhaustion nor procedural default are jurisdictional bars to review on the merits. *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (stating that the exhaustion requirement is not a jurisdictional one), *cert.*

9

thoughts and (2) explain to the jury what occurred. Because no state court has evaluated the merits

of this claim, review is *de novo*. *Higgins v. Renico*, 470 F.3d 624, 630-31 (6th Cir. 2006) (quoting

*Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) and citing *Wiggins v. Smith*, 539 U.S. 510, 534

(2003)).

### 1. Reading Testimony into the Record

A defendant in a state criminal case possesses a Sixth Amendment right to represent himself,

provided that he knowingly and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806,

807 (1975). Petitioner, however, has not explained when or how he was prevented from personally

questioning or addressing the jury. He gave an opening statement in which he was permitted to

address the jury without restrictions. He also was permitted to testify without a defense attorney

questioning him; he addressed the jury directly. And at the close of the proofs, Petitioner declined

to give a closing statement. He informed the trial court that he had already explained his theory of

the case and said what he needed to say. He was absolutely certain that he had nothing to tell the

jury. (Tr. Sept. 29, 1983, at 119.)

It is true that Petitioner was not permitted to read aloud testimony from his parole revocation

hearing. The testimony apparently offered an explanation for the money that was found on

Petitioner at his arrest. Petitioner wanted to show that his family had given the money to him.

Both defense counsel and the trial court informed Petitioner that he could not read the

testimony into the record (*id*. at 98-100), and the right of self-representation is not a license to

---

denied sub nom *Houk v. White,* __ U.S. __, 127 S. Ct. 578 (2006), *and cert. denied sub nom*
*White v. Houk,* __ U.S. __, 127 S. Ct. 581 (2006); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th
Cir. 2005) (noting that procedural default is not a jurisdictional bar to review on the merits), *cert.*
*denied*, __ U.S. __, 126 S.Ct. 1032 (2006).

violate "relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n. 46. Moreover, Petitioner was permitted to call his mother as a witness, and his mother testified that she and other members of the family had been giving Petitioner $60.00 per month as "pocket" money. (Tr. Sept. 29, 1983, at 102-03.) The Court therefore concludes that enforcement of certain evidentiary or procedural rules did not deprive Petitioner of a fair trial or his right to represent himself.

## 2. Voir Dire

The only other time when Petitioner was restricted from directly addressing the jury was during *voir dire*.

> A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, *to participate in voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial.

*McKaskle v. Wiggins*, 465 U.S. 168, 170-174 (1984) (emphasis added).

> *Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. *See Connors v. United States*, 158 U.S. 408, 413 (1895). Similarly, lack of adequate *voir dire* impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts.

*Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).

Trial courts nevertheless "retain[] great latitude in deciding what questions should be asked on voir dire." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). "The Constitution, after all, does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). As stated in *Irvin v. Dowd*, 366 U.S. 717 (1961), "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent'

11

jurors.  The failure to accord an accused a fair hearing violates even the minimal standards of due process."  *Id*. at 722.

Before *voir dire* commenced in this case, the prosecutor asked the trial court to conduct *voir dire* and to require the parties to submit any questions they might have to the court in writing.  When the trial court agreed to conduct *voir dire* and to require written questions from the parties, Petitioner objected "to the prosecutor's request that I don't get any rap with the jurors."  Petitioner stated that he wanted to question the jury himself.  The trial court responded that Petitioner would have an opportunity to present written questions to the court, but that it would ask such questions as it determined were pertinent.  Petitioner objected to this procedure.  (Tr. Sept. 28, 1983, at 30-32.)

During the actual *voir dire*, Petitioner submitted written questions to the trial court, which appears to have repeated the questions to the prospective jurors.  (*Id*. at 47- 49, 56-58, and 64-65).  Petitioner also challenged a juror for cause and exercised peremptory challenges.  More than once, he stated that he had no questions to submit to the court.  (*Id*. at 56, 65, 67, 96-97.)  And, after the prosecutor expressed satisfaction with the prospective jurors, Petitioner likewise stated that he was satisfied with the jury, even though it appears he had not exercised all his peremptory challenges.  (*Id*. at 97.)

Petitioner had an adequate opportunity to question the prospective jurors by submitting written questions to the trial court.  He has not shown that the restrictions placed on him during *voir dire* impeded his right to exercise peremptory challenges or to eliminate biased jurors.  The Court therefore concludes that Petitioner was not deprived of a fair trial by a panel of impartial jurors.

**IV.  Conclusion**

Petitioner's claim is untimely, procedurally defaulted, and without substantive merit. Accordingly, the application for the writ of habeas petition [Doc. 10, Jan. 5, 2006] and the pending motions for appointment of counsel [Docs. 5, 7, and 11] are DENIED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE


Dated:  March 16, 2007


CERTIFICATE OF SERVICE


The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 16, 2007.


s/Marie E. Verlinde
Case Manager
(810) 984-3290


13